IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHANDRA COCHRAN, et al.          :          CIVIL ACTION

v.                               :

CALDERA MEDICAL, INC.            :          NO. 12-5109

## MEMORANDUM ORDER

AND NOW, this 22nd day of April, 2014, upon consideration of the letter of defendant's counsel, dated March 31, 2014, requesting a protective order pursuant to Fed. R. Civ. P. 26(c)(1), plaintiffs' April 9, 2014, letter response, and defendant's reply letter dated April 17, 2014, it is hereby

**ORDERED**

that defendant's letter request is **DENIED IN PART** and **GRANTED IN PART**.

I.   BACKGROUND

This is a products liability case concerning implantable surgical meshes sold by defendant, Caldera Medical, Inc ("Caldera"). Plaintiff Shandra Cochran alleges serious medical injuries after she was implanted with Caldera's products in July 2009. Plaintiffs allege that the Caldera mesh products "contracted, degraded, migrated and eroded" causing serious injury to plaintiff Shandra Cochran's pelvic tissue and organs. (Pls.' Ltr. at 3.)

In accordance with the court's First Scheduling Order dated February 24, 2014 (Doc. 27), plaintiffs served defendant with interrogatories and a request for production of documents. See Def.'s Ltr. at Exhs. B and C. Defendant asserts that most of the requested documents consist of electronically stored information ("ESI"). Before producing the requested information, defendant proposed a protocol governing the production of documents and ESI (the

"ESI Protocol"). Plaintiffs objected to several provisions of the ESI Protocol. Defendant then submitted the current letter request for a protective order.

## II.     DISCUSSION

The parties present two issues for resolution. First, defendant contends that plaintiffs should share equally the expense or cost of producing defendant's ESI. Second, plaintiffs seek to amend certain provisions of the ESI Protocol. The court will address each of these issues in turn.

### A.     Cost-Sharing

Defendant represents that it is currently defending approximately 1,709 claims (filed and unfiled) nationwide involving its various transvaginal mesh products. (Def.'s Ltr. at 2.) According to defendant, the case at bar is the only case nationwide where there is active discovery against defendant. Id. at 3. Defendant further represents that it has limited financial resources. Id. at 2-3. As such, it seeks to have plaintiffs share equally the cost of producing documents and ESI.

Federal Rule of Civil Procedure 26(c) provides in relevant part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

Fed. R. Civ. P. 26(c)(1).

The United States Supreme Court has held that there is a presumption that each party to a lawsuit must bear its own discovery costs. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978). The Court stated: "[T]he presumption is that the responding party must

bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery." Id.

Rule 26(b)(2)(B), addresses the production of ESI that is not reasonably accessible. The Rule provides:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or costs. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Fed. R. Civ. P. 26(b)(2)(B).

Courts have interpreted the above Rule and have held that "[t]he obvious negative corollary of this rule is that accessible data must be produced at the cost of the producing party; cost-shifting does not even become a possibility unless there is first a showing of inaccessibility." Peskoff v. Faber, 244 F.R.D. 54, 62 (D.D.C. 2007). "Thus, it cannot be argued that a party should ever be relieved of its obligation to produce accessible data merely because it may take time and effort to find what is necessary." Id. See also Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, 284 (S.D.N.Y 2003) ("It is worth emphasizing again that cost-shifting is potentially appropriate only when inaccessible data is sought. When a discovery request seeks accessible data – for example, active on-line or near-line data – it is typically inappropriate to consider cost-shifting.") (emphasis in original).

In the instant case, defendant has not satisfied its burden of showing that the ESI sought by plaintiffs is inaccessible. "[I]n the world of electronic data, thanks to search engines, any data that is retained in a machine readable format is typically accessible." Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 318 (S.D.N.Y. 2003). "[A]ctive, online data, near-line data, and offline storage/archives are typically identified as 'accessible' electronic data." Juster Acquisition Co., LLC v. North Hudson Sewerage Auth., 2013 WL 541972, at *3 (D.N.J. Feb. 11, 2013) (citations omitted). "Backup tapes and erased, fragmented, or damaged data are typically identified as 'inaccessible' electronic data. Thus, electronic data that is stored in 'a readily usable format' is deemed 'accessible' whereas electronic data that is not readily usable (i.e., data that must be restored, de-fragmented, or reconstructed) is considered 'inaccessible.'" Id. (citations omitted).

In its submissions to the court, defendant has not demonstrated that the bulk of the ESI requested by plaintiffs is inaccessible. For example, defendant has not stated that the information is not active online or near-line data. Nor has defendant represented that, with the one exception noted below, the ESI sought needs to be restored or otherwise manipulated to be usable, and that is why retention of an outside expert is necessary. Rather, defendant merely states that an unnamed vendor has estimated that it would cost $500,000.00 "to collect, process and review the paper and electronic documents necessary to respond to Plaintiffs' discovery demands." (Def.'s Ltr. at 3-4 (citing Stuart Cert. ¶ 6).)[1] However, this assertion, unsupported by

---

[1] In its reply letter dated April 17, 2014, defendant now estimates that the costs of producing the ESI to be "at least $800,000," and the estimate does not include the cost of reviewing the ESI, and the cost of collecting, providing and reviewing of paper documents. (Def.'s Reply Ltr. at 4.) Defendant does not explain why its estimated costs have dramatically increased since its original submission to the court on March 31, 2014. The court declines

any invoice or detailed proposal, is insufficient to satisfy defendant's burden.  For instance, the court cannot determine what portion of these projected costs are attributable to retrieving accessible data, or to time reviewing the documents for privilege materials, both of which tasks are typically not subject to cost-sharing.  See Zubulake, 216 F.R.D. at 290 ("As a general rule, where cost-shifting is appropriate, only the costs of restoration and searching should be shifted.  Restoration, of course, is the act of making inaccessible material accessible . . . .  However, the responding party should always bear the cost of reviewing and producing electronic data once it has been converted to an accessible form.") (emphasis in original).

   Thus, defendant has failed to satisfy its burden under Rule 26(b)(2)(B) and this court will not impose cost-sharing on plaintiffs.  See Juster, 2013 WL 541972, at *4 (denying request for cost-shifting because defendant failed to show that requested ESI was inaccessible); Foreclosure Mgmt. Co. v. Asset Mgmt. Holdings, LLC, 2008 WL 3822773, at *7 (D. Kan. Aug. 13, 2008) (denying request for cost-shifting after finding that "estimate" of number of hours to search for ESI to be inadequate to support its undue burden objection).

   The court notes that under Rule 26(b)(2)(C)(iii), the court could order the plaintiffs to share the costs of producing ESI discovery from defendant, even if most of the ESI is accessible (as appears to be the case here).  Id.  See also Shira A. Scheindlin & Daniel J. Capa, Electronic Discovery and Digital Evidence 314 (2009) ("[c]ost- shifting is available even for accessible data based on the proportionality factors set forth in Rule 26(b)(2)(C)").  However, to do so, the court must find that:

---

defendant's invitation to review the vendor's invoices in camera, without the benefit of review of plaintiffs' counsel.

> [T]he burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C)(iii). The court declines to find that the burden or expense of the proposed discovery outweighs its likely benefit. The discovery sought is critical to plaintiffs' case. As explained by plaintiffs:

> Plaintiffs seek only highly specific information related to adverse events associated with the use of pelvic mesh products; Defendant's efforts to ensure the safety of its pelvic mesh products; information regarding the product generated or disseminated by Defendant regarding marketing and safety; and its compliance with FDA requirements. Plaintiffs seek nothing more than what Defendant is required by law to have on hand and make available to the FDA in the event of an agency audit of Defendant's business practices. Plaintiffs' requests are narrowly tailored to generate relevant and material information specific to Plaintiffs' claims regarding Defendant's pelvic mesh products.

(Pls.' Ltr. at 9.) Given the importance of the discovery requests to plaintiffs' ability to prove their claims, and the seriousness of the injuries alleged by plaintiffs,[2] the court finds that the burden or expense of plaintiffs' discovery requests to defendant is outweighed by the likely benefit to plaintiffs.[3]

---

[2] Plaintiffs alleged that "[s]ince her implantation in 2009, Mrs. Cochran has suffered intractable pain, incontinence, vaginal shrinkage and painful sexual intercourse, among many other painful and permanent conditions. She required an additional revision surgery in 2011 when Caldera's mesh implant eroded into her pelvic organs. Once an aspiring nurse, Plaintiff was forced to drop out of nursing school due to incessant pain and the medical demands of her condition." (Pls.' Ltr. at 12.)

[3] The facts of the instant case are clearly distinguishable from Boeynaems v. LA Fitness Int'l, LLC, 285 F.R.D. 331 (E.D. Pa. 2012) cited by defendant. The court in Boeynaems shifted the costs of discovery relating to plaintiffs' request for class certification after the defendant had borne the expense of producing a great amount of discovery which consisted of voluminous ESI and paper documents. Id. at 340. The court stated: "Where the burden of discovery is almost entirely on the defendant, principally because the Plaintiffs seek class

The court acknowledges defendant's assertion that it is a company of limited resources and with limited insurance coverage to pay any judgments for the over 1,700 claims that have been filed by individuals across the country relating to its pelvic mesh products. Nevertheless, given the volume of the litigation against it, defendant inevitably will need to gather the information sought by plaintiffs. It would be inequitable for the plaintiffs in the case at bar to be singled out and essentially penalized because defendant has numerous claims against it. Defendant has not demonstrated that it will be unduly burdensome for it to produce the majority of the requested information at its own expense.

B.     **Other Issues**

Plaintiffs have identified three remaining issues that the parties have discussed but were unable to resolve. First, plaintiffs request that defendant "complete and correct metadata as Plaintiffs may reasonably require on a document by document basis only." (Pls.' Ltr. at 18.)[4]

---

certification, then the Plaintiffs should share the costs." Id. at 341 (emphasis added). In the instant case, the proposed discovery goes to the merits of plaintiffs' claims, not to class certification. Furthermore, defendant has produced no discovery to date to plaintiffs.

[4]     Metadata is defined as follows:

> **Metadata**: Data typically stored electronically that describes characteristics of ESI, found in different places in different forms. Can be supplied by applications, users or the file system. Metadata can describe how, when and by whom ESI was collected, created, accessed, modified and how it is formatted. Can be altered intentionally or inadvertently. Certain metadata can be extracted when native files are processed for litigation. Some metadata, such as file dates and sizes, can easily be seen by users; other metadata can be hidden or embedded and unavailable to computer users who are not technically adept. Metadata is generally not reproduced in full form when a document is printed or electronic image.

Shira A. Scheindlin & Daniel J. Capra, Electronic Discovery and Digital Evidence 692 (App. VI) (2009).

Second, plaintiffs request that defendant produce certain text messages and voicemail messages. Id. at 18-19.  Third, plaintiffs request that defendant produce "corrupted and encrypted" ESI.  Id. at 19.[5]  With respect to plaintiffs' three requests, defendant avers that production of these items would be "unduly burdensome" pursuant to Rule 26(b)(2)(C)(iii) and that some of the ESI requested "is not readily accessible."

The court will deny these three requests without prejudice to plaintiffs' right to file a Motion to Compel pursuant to Federal Rule of Civil Procedure 37 at an appropriate time. Until defendant produces the bulk of the requested ESI, plaintiffs do not know what metadata is needed for a particular document.  It may be that the number of documents for which metadata is sought is minimal.

With respect to text messages and voicemail messages, the court shares defendant's concerns that the burden of satisfying this broad request for text and voicemail messages may be outweighed by the factors set forth in Rule 26(b)(C)(iii).  The court instructs

---

[5] Corrupted and Encrypted Files are defined as follows:

> **Corrupted File**: A file damaged in some way, such as by a virus, or by software or hardware failure, so that it is partially or completely unreadable by a computer.
>
> **Encryption**: A procedure that renders the contents of a message or file scrambled or unintelligible to anyone not authorized to read it.  Encryption is used to protect information as it moves from one computer to another and is an increasingly common way of sending credit card numbers and other personal information over the Internet.

Shira A. Scheindlin & Daniel J. Capra, Electronic Discovery and Digital Evidence 665, 675 (App. VI) (2009).

plaintiffs to confer with defendant about narrowing their request for text messages and voicemail messages.  If the parties cannot reach an agreement on these items, plaintiffs may file a Motion to Compel under Rule 37.

Finally, defendant has represented that corrupted and encrypted files requested by plaintiffs are not readily accessible.  (Def.'s Ltr. at 9-10.)  Should plaintiffs wish to re-assert their request for this allegedly inaccessible ESI, plaintiffs should file a Motion to Compel pursuant to Rule 37.

### III.   CONCLUSION

Within thirty (30) days of the date of this Order, defendant shall produce all documents requested in plaintiffs' requests for the production of documents consistent with the terms of this Memorandum Order.

BY THE COURT:

/s/ Thomas J. Rueter
THOMAS J. RUETER
United States Magistrate Judge